IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

BETTY J. MURRAY,                         )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )        CASE NO. 3:10cv348-MEF
                                         )
DON INGRAM,                              )
                                         )
        Defendant.                       )

**ORDER AND
RECOMMENDATION OF THE MAGISTRATE JUDGE**

For good cause, it is

ORDERED that the Recommendation (Doc. #47) entered by the undersigned
Magistrate Judge on January 24, 2011, is hereby VACATED and that the following
Recommendation be entered on the docket.

Currently pending before the undersigned Magistrate Judge is Defendant's Motion for
Summary Judgment (Doc. #42) and supporting brief and evidentiary submissions. Plaintiff
Betty J. Murray ("Plaintiff" or "Murray") has filed what appears to be a Response (Doc. #43)
to the Motion and what appears to be an amendment to the Response (Doc.# 45). Defendant
has also filed a Reply (Doc. #44) to Plaintiff's Response. Finally, Plaintiff has also filed a
document styled "A Pleading - A Motion for Relief, Damages" (Doc. #46). All of these
various pleadings are ripe for consideration and are before the undersigned for
recommendation or other appropriate action. For the reasons that follow, the Magistrate
Judge RECOMMENDS that the Motion for Summary Judgment (Doc. #42) be GRANTED

and that this case be DISMISSED.

## I.  BACKGROUND

On April 22, 2010, Plaintiff filed a form EEOC Complaint (Doc. #1) in which she alleged that Defendant Don Ingram ("Defendant" or "Ingram") discriminated against her on the basis of her race and religion during the course of her employment with the Auburn City Schools and in terminating her employment.  Specifically, Plaintiff alleged the following: that Defendant Ingram is the Transportation Supervisor of Auburn City Schools; that Defendant "use[d Plaintiff's] injury to try and hurt [her] and [her] faith"; that Defendant would "call [Plaintiff] names"; that Defendant "tried [sic] to blackball" Plaintiff; that Defendant prepared reports for the Board of Education which got Plaintiff terminated "because of many bad and negative phone calls and evaluations"; that Defendant "was writing [Plaintiff] up and using false reports and reading more into the report that happen"; that Defendant "would try to get false statement" and "try to get [Plaintiff] to sign false report"; that Defendant "would speak very hard words to me.  Shame me around other bus drivers.  Tell negative report that I did something . . . try to get other people to stop talking to me."  Complaint (Doc. #1) at 1-2.  Plaintiff further asserted that she was employed until October 29, 2009, but that the discrimination "occurred on or about the year of 2007 or about."  *Id.* at 2.

On April 30, 2009, this case was referred to the undersigned Magistrate Judge "for all pretrial proceedings and entry of any orders or recommendations as may be appropriate."  Order (Doc. #4).  On May 14, 2010, Plaintiff filed an Amended Complaint (Doc. #4) which

alleged that Defendant "harassed" her while she was employed with Auburn City Schools, that he caused her to be suspended from her job but could not prove that she had done anything worthy of suspension, that he spread "false information about [her] religion," that he made false reports about her, that he slandered her to her co-workers and caused them to treat her poorly, and that he did not treat white bus drivers in this manner. Amended Complaint (Doc. #6) at 1-2. Plaintiff predicates all allegations of employment discrimination on Title VII of the Civil Rights Act of 1964. Pursuant to the Court's Order (Doc. #5) that Plaintiff amend her complaint, Plaintiff also attached a number of documents to her Amended Complaint, including her EEOC Charge of Discrimination and evidentiary items which she asserts support her various allegations of discriminatory conduct.

On December 3, 2010, Defendant filed the instant Motion and supporting materials. Defendant asserts he is entitled to summary judgment for the following reasons: 1) certain of Plaintiff's claims are untimely and statutorily barred; 2) Plaintiff cannot establish a *prima facie* case of racial or religious discrimination; 3) that, even assuming such a *prima facie* case, Defendant had legitimate, non-discriminatory reasons for any adverse employment actions taken against Plaintiff; 4) that Plaintiff cannot present sufficient evidence to rebut Defendant's legitimate and non-discriminatory reasons for any adverse employment actions; 5) that Defendant is entitled to qualified immunity on all of Plaintiff's discrimination claims; 6) that, to the extent Plaintiff seeks to hold the Auburn City Schools Board of Education liable for Defendant's actions, Plaintiff has not shown any evidence that the Board discriminated against her; and 7) that Plaintiff has not established a claim of constructive

discharge.

## II.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[1]   Only disputes about material facts will preclude the granting of summary judgment.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).   "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law."  *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir.1996) (quoting *Anderson*, 477 U.S. at 248).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion[,]" and alerting the Court to portions of the record which support the motion.  *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986).

---

[1]    On December 1, 2010, amendments to Rule 56 became effective.  The instant motion was filed on December 3, 2010.  The amendments to Rule 56 generally reorganize the provisions of the Rule and incorporate language which is "intended to improve the procedures for presenting and deciding summary judgment-motions and [is] . . . *not intended to change the summary-judgment standard or burdens*." *Farmers Ins. Exchange v. RNK, Inc.*, __ F.3d __, 2011 WL 183969 at *9 n.4 (1st Cir. Jan. 21, 2011) (internal quotations omitted) (emphasis in original).  Moreover, because the summary judgment standard remains the same, the amendments "will not affect continuing development of the decisional law construing and applying" the standard now articulated in Rule 56(a).  Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendments.  Accordingly, while the Court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule.

However, once the movant has satisfied this burden, the non-movant is then similarly required to cite to portions of the record which show the existence of a material factual dispute. *Id.* at 324. In doing so, and to avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the non-movant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson*, 477 U.S. at 255. After the non-moving party has responded to the motion for summary judgment,

5

the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

## III.   STATEMENT OF UNDISPUTED FACTS

The Court has carefully considered the pleadings in this case and all documents submitted in support of, and in opposition to, the Motion for Summary Judgment. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts[2]:

Plaintiff is an African-American female who describes herself as "Full Gospel Pentecostal." Defendant is the Transportation Supervisor for Auburn City Schools. Plaintiff was formerly employed as a bus driver by Auburn City Schools. As Plaintiff's supervisor, Defendant was responsible for generally overseeing Plaintiff's job performance, including administering discipline, conducting performance evaluations, and receiving and acting upon any complaints involving Plaintiff or other issues with her performance.

---

[2]      In filing his brief in support of his motion for summary judgment, Defendant failed to include in the brief "a statement of facts divided into two parts: Uncontested Facts and Contested Facts[,]" as was required by this Court's Order (Doc. #23) setting forth the briefing schedule for dispositive motions. Plaintiff's opposition to the motion also does not include any statement of facts divided into uncontested and contested sections, as required by the Order. Hence, the Court's task in cobbling together the uncontested facts has been made more difficult.

However, upon observation of the *pro se* Plaintiff's various pleadings and her demeanor in court proceedings before the undersigned, the Court recognizes that, if Defendant attempted to work with Plaintiff in producing a statement of uncontested facts, such effort was probably futile. Accordingly, the Court will not presently penalize Defendant for his failure to adhere to this Court's Order regarding the content of briefing in support of dispositive motions. In any event, the Court's following recitation of undisputed facts consists of facts which are either admitted by Plaintiff, are not rebutted by Plaintiff, or are supported by documentary evidence which Plaintiff has not challenged. *See* Fed. R. Civ. P. 56(e)(2).

In 2008, Defendant observed or received notice of several issues concerning Plaintiff's performance.  Because of these events, Defendant undertook various disciplinary measures, including: on September 29, 2008, Defendant counseled Plaintiff about dropping students off at the wrong stop; on October 24, 2008, Defendant determined that Plaintiff collided with a pole in the bus lot and counseled her to be more cautious; and on November 5, 2008, Defendant issued a warning letter to Plaintiff based on her failure the previous day to properly count and observe students on her route and failure to deliver one student at his or her drop-off location.  *See Affidavit of Ingram*, Evidentiary Submission in Support of Motion for Summary Judgment (Doc. #42-1) at ¶¶ 9-11.[3]  In addition to these events, on November 10, 2008, Defendant placed Plaintiff on paid leave while he investigated a November 6, 2008, incident in which Plaintiff was alleged to have collided with a light pole at a local apartment complex and left the scene without reporting the incident.  *Id.* at ¶ 13. On November 13, 2008, the Superintendent of Auburn City Schools informed Plaintiff, via letter, that as a result of the investigation into the incidents of November 4 & 6, it was determined that Plaintiff had failed to report an accident to her supervisor, failed to admit that the accident had occurred, and failed to properly check her bus to ensure no students were left on the bus.  Plaintiff was advised that any further violations of policy could result in her termination.  *Id.* at ¶ 14.

---

[3]      In Plaintiff's Response (Doc. #45) to Defendant's Motion, Plaintiff concedes that "[o]n Nov. 4 I miss a little girl bus stop because I could not see her[,]" but that she "check my bus like I all way [sic] do and found the little girl and carry her house in the bus."  *See* Pl.'s Amendment to Response (Doc. #45-2).

Defendant conducted Plaintiff's mid-year evaluation on November 18, 2008.  In the category "EMPLOYEE WEAKNESSES," Defendant stated, in addition to the two incidents involving Plaintiff's collisions with poles, that Plaintiff "has difficulty following directions," is "argumentative . . . to the point of insubordination," is "argumentative with students," and had "on three different occasions this school year . . . [failed to] properly count and observe all students on bus [with] a total head count of nine students." *Performance Appraisal of Classified Personnel*, Ex. G to Ingram Affidavit (Doc. #42-1).[4]

On January 29, 2009, Defendant received a number of complaints from students regarding Plaintiff's driving and her demeanor on the bus.  Among other issues, three of the complaints discuss an incident on the previous day where Plaintiff drove the bus into a curb with sufficient force to cause slight injuries to some students.  *See* Affidavit of Ingram (Doc. #42-1) at ¶ 16.

On May 1, 2009, Defendant conducted a Classified Personnel Evaluation of Plaintiff. Defendant rated Plaintiff "Unsatisfactory" in "Job Knowledge," "Quality of Work," "Cooperation," and "Initiative."   Defendant also indicated that Plaintiff "Needs improvement" in "Responsibility" but that Plaintiff was "Satisfactory" in "Dependability." Overall, Defendant indicated that Plaintiff's performance had declined from her last

---

[4]      The section of the appraisal reserved for the employee's signature is left blank but includes the handwritten notation that "Betty is out on medical leave 6-8 weeks, will go over appraisal when Betty returns."  However, it is unclear if the evaluation was ever reviewed with Plaintiff because Plaintiff's May 1, 2009, Classified Personnel Evaluation, attached as Exhibit I to Defendant's Affidavit, indicates that the date of the last evaluation of Plaintiff was April 24, 2008.

evaluation and that she should not be able to "continue in her present position."  Defendant's additional comments in the various sections of the evaluation generally recount the various incidents involving Plaintiff's performance over the several months prior to May, 2009.  The evaluation also provides a section for the "Employee's Response" to the grade and commentary in each section.  Plaintiff only provided one written response to any of the grades or comments on the evaluation.  In the section marked "Initiative," after scoring Plaintiff "unsatisfactory," Defendant additionally stated "Betty seems incoherent during conversations.  Betty has to be told exactly what to do."  In response, Plaintiff stated "I disagree because I am not space out talk to members of my church of family."  Despite this singular response, according to a notation on the evaluation, Plaintiff refused to sign the evaluation because she did not agree with its content. *See Classified Personnel Evaluation*, Ex. I to Ingram Affidavit (Doc. #42-1).[5]

On October 8, 2009, Defendant counseled Plaintiff regarding a parental complaint that Defendant received the previous day.  In the complaint, the parent discussed several issues with Plaintiff's performance, including the parent's observation of multiple incidents of reckless driving, failing to drop-off the parent's child on an initial pass by the assigned stop, Plaintiff allowing her husband to drive the bus, and Plaintiff's demeanor with children on the bus.  The parent also alluded to the concerns of other parents whose children were on

---

[5]        A disclaimer included on the evaluation above the line for the employee's signature reads as follows: "I acknowledge that I have examined this evaluation and have had the opportunity to discuss it with my supervisor.  I understand that my signature does not necessarily mean that I agree with this evaluation."

Plaintiff's route. *See E-mail from parent to Ingram*, Ex. J to Ingram Affidavit (Doc. #42-1).

On October 14, 2009, Defendant again counseled Plaintiff about an incident the previous day in which Plaintiff failed to drop-off a student at the designated residence, but instead at another residence, and did not call for help or approval before so acting. Plaintiff generally denied any wrongdoing, claiming that the "paperwork" was wrong and that Defendant was unfairly targeting her. Defendant suspended Plaintiff with pay and instructed her to arrange a meeting with another official at Auburn City Schools to discuss Plaintiff's options as far as retirement or resignation from her position. *See* Affidavit of Ingram (Doc. #42-1) at ¶¶ 18-20.

On October 20, 2009, Plaintiff provided a letter addressed to "Board of Ed" which appears to state as follows: "My job with Auburn board of Ed. I have quit[.] Sign BJ. Murray." *See* Ex. A to Amended Answer (Doc. #19-1). Later, on November 19, 2009, the Auburn City Board of Education issued a letter addressed to Plaintiff which informed her that the Board voted to "accept your resignation as a bus driver for Auburn City Schools effective October 20, 2009." *See id.* at Ex. B.

Plaintiff submitted her formal EEOC Charge of Discrimination on November 10, 2009. In the Charge, Plaintiff alleged that she was discharged on October 19, 2009, that the reason given for her termination was "dropping off a child at the wrong house," that Defendant "found fault with me continuously and harassed me and gave me write-ups and unsatisfactory evaluations," and that "[w]hite bus drivers were treated with respect and not

subjected to harassment as I was." *See* Charge of Discrimination, Ex. 3 to Amended EEOC

Complaint (Doc. #6-4). Plaintiff also stated that she "believe[d] her discharge was because

Mr. Ingram did not like me" and that she was "discriminated against because of [her] race

and religion" in violation of Title VII. *Id.* On March 1, 2010, the EEOC issued to Plaintiff

a Notice of Suit Rights letter in which the EEOC advised that it was dismissing its

investigation and was "unable to conclude that the information obtained establishes

violations of the statutes" enforced by the EEOC. Plaintiff filed suit in this Court on April

22, 2010.

## IV.   DISCUSSION

Defendant has moved for summary judgment as to all of Plaintiff's claims. The Court

will address Defendant's arguments below.

### A.   Timeliness of Plaintiff's suit.

Defendant first asserts that some, if not all, of Plaintiff's claims are untimely and

therefore subject to dismissal as a matter of law. In order to exhaust her administrative

remedies with respect to her Title VII discrimination claims, Plaintiff was required to file a

"timely charge of discrimination with the EEOC." *Wilkerson v. Grinnell Corp.*, 270 F.3d

1314, 1317 (11th Cir. 2001) (discussing exhaustion requirement in Title VII context).

Accordingly, the Eleventh Circuit has instructed as follows:

> In order to litigate a claim for discrimination under Title VII . . . a
> plaintiff must first exhaust his administrative remedies, beginning with the
> filing of a charge of discrimination with the EEOC. In a non-deferral state,
> such as Alabama, a plaintiff must file an employment discrimination charge
> with the EEOC within 180 days after the date of the alleged discrimination.

> Failure to file a timely charge with the EEOC results in a bar of the claims
> contained in the untimely charge.
>
> Under Title VII . . . , a charge must be in writing under oath or
> affirmation and contain such information and be in such form as the [EEOC]
> requires. The EEOC requires that a charge be in writing and . . . verified. A
> charge is verified when it is made under oath or affirmation. The verification
> requirement is mandatory.

*Rizo v. Alabama Dept. of Human Resources*, 228 F. App'x 832, 835 (11th Cir. 2007)

(internal quotations and citations omitted).

In this case, it is undisputed that Plaintiff submitted her verified Charge of
Discrimination on November 10, 2009. In the section captioned "Date(s) Discrimination
Took Place," the Charge indicates that the discrimination occurred between November 5,
2008, and October 19, 2009. However, Plaintiff's Amended Complaint states that the
"alleged discrimination occurred on or about 2001 - 2009 are there in the Amended report."
Amended Complaint (Doc. #6) at 2. Moreover, separately in the Amended Complaint,
Plaintiff discusses an incident of perceived discriminatory conduct by Defendant in April of
2003. *Id.* at "Ex. 1" (Doc. #6-1).

Plaintiff's vague allegations about discrimination dating as far back as 2001
notwithstanding, it is apparent that Plaintiff's Amended Complaint is chiefly concerned with
the alleged discriminatory conduct which began in the Fall of 2008 and continued until
October of 2009. Conduct during this period is the only possible conduct for which it can
be said that Plaintiff has exhausted her remedies through the EEOC and, hence, any actions
described in the Amended Complaint which date to 2001 or 2003 are simply unexhausted

and time-barred.

Defendant also contends that any allegations of discriminatory conduct predating May 14, 2009, are time-barred as Plaintiff filed her EEOC charge 180 days later on November 10, 2009. While Defendant's position is potentially meritorious,[6] the Court ultimately need not determine whether such claims are excepted from the 180-day requirement pursuant to the continuing violation doctrine, *see, e.g., Greer v. Marco Warehousing, Inc.,* 179 F. Supp. 2d 1332, 1337-38 (M.D. Ala. 2001), because, for the reasons given below, Defendant is entitled to summary judgment on the merits of Plaintiff's discrimination claims.

### B.   Discrimination in violation of Title VII of the Civil Rights Act of 1964.

Construing her Amended Complaint liberally, Plaintiff's allegations appear, vaguely, to broach separate spheres of employment discrimination: disparate treatment and/or discharge and harassment or hostile environment. Defendant contends that Plaintiff has failed to state a *prima facie* claim of race or religious-based discrimination under either of these theories and that, even if she could state a *prima facie* case of discrimination, Defendant's actions were supported by legitimate, non-discriminatory reasons.

---

[6]   Judging the ultimate merit of Defendant's untimeliness arguments is complicated by the fact that Plaintiff has largely failed to make specific allegations of discriminatory actions by Defendant, including the dates of such actions. While Plaintiff vaguely complains of repeated "harassment" and other bad actions by Defendant, for the most part Plaintiff fails to state when these various actions occurred. It is clear, however, that Plaintiff is particularly aggrieved by Defendant's actions around October, 2009, when Plaintiff became no longer employed by Auburn City Schools. Plaintiff variously characterizes these events as resulting in a "termination" and being "remove off my job[sic]." The events which immediately precipitated Plaintiff's termination of employment with Auburn City Schools are clearly within the 180 days contemplated by Title VII.

1.    **Disparate treatment and/or discriminatory discharge recommendation.**

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).  "A prima facie claim of discrimination can be established three ways: 1) direct evidence; 2) circumstantial evidence; or 3) statistical proof." *Davis v. City of Panama City, Fla.*, 510 F. Supp. 2d 671, 681 (N.D. Fla. 2007) (citing *Earley v. Champion Int'l Corp.*, 907 F. 2d 1077, 1081 (11th Cir.1990)).  Plaintiff has offered no direct evidence of racial discrimination by Defendant.  Rather, Plaintiff's Complaint appears to rely upon only circumstantial evidence in support of her claims of discrimination.  Accordingly, the Court must utilize the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny.[7]

Under the *McDonnell Douglas* framework, to establish a *prima facie* case of race discrimination under Title VII the plaintiff must show: "(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated

---

[7]    *See  Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) ("When a plaintiff offers circumstantial evidence to prove a Title VII claim, we use the analytical framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [] (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. The establishment of a prima facie case creates a presumption of discrimination. The employer must then offer legitimate, nondiscriminatory reasons for the employment action to rebut the presumption. If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual.").

similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).  This analytical framework likewise applies to Plaintiff's religious discrimination claim. *See MackMuhammad v. Cagle's, Inc.,* 379 F. App'x 801, 804 (11th Cir. 2010).

There is no dispute that Plaintiff is a member of a protected class, that she was subjected to an adverse employment action insofar as she was counseled and/or disciplined from time-to-time,[8] or that Plaintiff was qualified to do the job which she once held. Defendant does dispute, however, that Plaintiff has offered a legitimate comparator for purposes of showing that similarly situated persons outside Plaintiff's protected class received favorable treatment.

In order to serve as a legitimate comparator, "[t]he plaintiff and the employee she identifies as a comparator must be similarly situated in all relevant respects.  The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004) (internal quotation omitted).  The Eleventh Circuit recently addressed this requirement in the disparate discipline context:

> When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, we evaluate whether the employees are involved in or accused of the same or similar conduct and are disciplined in

---

[8]     Defendant does dispute that Plaintiff was terminated from her position, instead insisting, with the evidentiary support noted *supra*, that Plaintiff resigned.

different ways.  In so doing, we require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.

*Miller-Goodwin v. City of Panama City Beach, Fla.,* 385 F. App'x 966, 971(11th Cir. 2010) (internal quotations and citations omitted).  Plaintiff does not name any bus drivers, of any class, whom were believed to have been involved with similar performance issues yet were not similarly disciplined by Defendant.  Moreover, although Plaintiff asserts in her Amended Complaint that Defendant "did not treat any white co-worker are [sic] put any driver who drove bus like he did me[,]" Amended Complaint (Doc. #6) at 2, she does not name any such similarly situated white employees for purposes of comparison.  Plaintiff's Response (Doc. #43) and Amended Response (Doc. #45) likewise fail to name a comparator for purposes of establishing a *prima facie* case.

Plaintiff is not permitted to stand on the allegations of her complaint in order to establish all the elements of a *prima facie* case.  *See Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c) (articulating procedure through which a party must support assertion about a genuine dispute of fact).  Because Plaintiff has provided no evidence that other employees were given more favorable treatment by Defendant despite their commission of similar conduct, and has failed to cite "to particular parts of materials in the record" which support that assertion, Plaintiff has failed to state a *prima facie* case of discrimination and her Title VII claims are due to be dismissed.  *See Alansari v. Tropic Star Seafood, Inc.,* 388 F. App'x 902, 903-904 (11th Cir. 2010) (finding no error in district court's ruling that plaintiff failed to establish a *prima facie* case of racial or religious discrimination "because he presented no

16

valid comparator").

Even if this Court assumes, *arguendo*, that Plaintiff has established a a *prima facie* case of racial or religious discrimination in the form of disparate treatment and/or a biased discharge recommendation, Defendant has provided the Court with legitimate, non-discriminatory reasons for any adverse employment actions taken against Plaintiff. Specifically, Defendant states that Plaintiff's "job performance took a serious turn for the worse during the fall of 2008[,]" which included the above-described incidents involving Plaintiff's multiple failures to properly account for all of the students on her bus, multiple collisions with stationary poles and a curb, parental complaints about unsafe driving and Plaintiff's demeanor, and Plaintiff's failure to drop-off a student at the location dictated by her instructions. Def.'s Brief (Doc. #42-2) at 16-18. Defendant's reasoning is both non-discriminatory and legitimate, especially considering the heightened concerns Defendant naturally harbors about the competence and care with which bus drivers execute their duties. Over the course of more than a year, Defendant documented several instances which, for him, caused him to question Plaintiff's fitness to continue driving a school bus and led him to determine that he should recommend Plaintiff's termination. Thus, evidence in the record establishes that Defendant's proffered reasons for disciplining and/or deciding to recommend Plaintiff's termination were legitimate and non-discriminatory. Accordingly, the burden shifts back to Plaintiff to discredit Defendant's proffered reasons as pretextual.

In order to survive summary judgment where the plaintiff asserts that an employer's proffered legitimate reasons for termination are pretext, the plaintiff must

cast sufficient doubt on the defendant's proffered . . . reasons to permit a reasonable fact finder to conclude that the employer's proffered reasons were not what actually motivated its conduct but were pretext for [the discriminatory action].   A plaintiff may show pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.   A plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable.   In reviewing a summary judgment motion, the district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.

*Corbitt v. Home Depot U.S.A., Inc.,* 573 F.3d 1223, 1248 (11th Cir. 2009) (internal quotations and citations omitted).

In this case, Plaintiff has failed to cast sufficient doubt on Defendant's proffered legitimate and non-discriminatory reasons.   While Plaintiff denies some of the more serious allegations against her - including that she collided with a light pole and left the scene of such accident or that she ever failed to properly account for all of the students on her bus - Plaintiff does not produce any evidence in support of her denials.   Rather, Plaintiff simply denies such conduct, accuses Defendant of distorting her actions, and offers to take a lie detector test. *See* "Evidentiary Submission in Support of Motion for Opposition Amendment Brief" (Doc. #45-2) at 2.   Plaintiff must offer more than her own vague and conclusory assertions or denials.   Rather, Plaintiff is required to cite to "particular parts of materials in the record" which support her assertion that a genuine factual dispute exists or she must show that "the materials cited [by Defendant, including his affidavit, a police report, complaints

18

from students and a parent, personnel evaluations, and Defendant's notes from the relevant events,] do not establish the absence . . . of a dispute."  Fed. R. Civ. P. 56(c)(1)(A) & (B). Plaintiff simply has not satisfied this requirement.[9]  In short, Plaintiff's conclusory denials and her refrain that Defendant deliberately distorted her record in order to cause her termination simply does not demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  *Corbitt,* 573 F.3d at 1248.  Accordingly, Plaintiff has failed to show that Defendant's reasons for any adverse employment action taken against her were pretextual.

Plaintiff has not established a *prima facie* case of racial or religious discrimination flowing from the adverse employment actions about which she complains, and she has not demonstrated that a reasonable fact finder could determine that the legitimate, non-discriminatory reasons given for such actions are pretextual.  Accordingly, she cannot withstand summary judgment on her disparate treatment and/or termination recommendation

---

[9]      To the extent Plaintiff does provide any evidentiary materials beyond her own conclusory assertions, she only offers what appear to be a couple undated notes from students who rode her bus.  "Evidentiary Submission in Support of Motion for Opposition Amendment Brief" (Doc. #45-2) at 3-4.  To the extent the notes are legible, their relevance is questionable, as they do not appear to be related to any of the circumstances which animated Defendant's decisions to discipline Plaintiff.  Even crediting them for the purpose for which Plaintiff has offered them, to show that "Plaintiff got along with kids fined [sic]," the notes do not cast any doubt on any of the essential reasons articulated by Defendant for any adverse employment action against Plaintiff.

claims.[10]

### C.   Plaintiff's claim of a racially and/or religiously hostile environment.

Although Plaintiff does not expressly plead a claim of hostile environment related to her race and/or religion, Plaintiff does allege that she was subjected to harassment and ridicule by Defendant.  To the extent such allegations can be construed as comprising a claim of hostile environment, such claim is clearly without merit.  "[I]n order '[t]o establish that a workplace constitutes a hostile work environment, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Butler v. Alabama Dept. of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008) (quoting *Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002)).  To begin with, Plaintiff only vaguely describes any alleged harassment or ridicule to which she was subjected, and she does not expressly indicate that such conduct was predicated on her race or religion.  Moreover, Plaintiff's vague allegations of sporadic ridicule and harassment, even if taken as true and assuming there was some racial or religious animus, do not rise to the

---

[10]      The undersigned is also mindful that, in this Circuit, "[t]he ultimate question in a disparate treatment case is not whether the plaintiff established a *prima facie* case or demonstrated pretext, but whether the defendant intentionally discriminated against the plaintiff." *Nix v. WLCY Radio/Rahall Commc's*, 738 F.2d 1181, 1184 (11th Cir.1984) (internal quotations omitted).  Thus, even after undertaking the pretext analysis above, the Court has reviewed the entire record in consideration of the Motion for Summary Judgment and finds that there was no intentional discrimination against Plaintiff. Particularly, the Court notes the lack of specific allegations about any apparent nexus between Defendant's purported discriminatory animus and his actions.

level of a hostile work environment pursuant to the standards articulated above.  Finally, for summary judgment purposes, Plaintiff has not presented any evidence supporting her allegations of such harassment or ridicule and has not cited "to particular parts of materials in the record" which support her assertions of such.  Fed. R. Civ. P. 56(c).  In responding to a motion for summary judgment, Plaintiff is not entitled to rely upon the general allegations of her complaint.  *Id.*  Because Plaintiff has not presented any evidence substantiating any of her claims of harassment or ridicule, Defendant is entitled to summary judgment as to any claim that Plaintiff was a victim of a hostile work environment.

## V.   CONCLUSION

For the reasons specified above, the Magistrate Judge RECOMMENDS as follows:

1.      that Defendant's Motion for Summary Judgment (Doc. #42) be GRANTED;

2.      that, to the extent Plaintiff's "A Pleading - A Motion for Relief, Damages" (Doc. #46), presents any motion for relief, such motion be DENIED; and

3.      this case be DISMISSED.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation by **February 17, 2011**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the

Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 3rd day of February, 2011.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE